## Shane Bros. & Wilson Co. v. Painter.

*Practice, C. P.—Pleading—Statement of claim—Copy of contract—Inferences—Act of May 14, 1915.*

1. Under the Practice Act of May 14. 1915, P. L. 483, the facts of plaintiff's statement of claim must be set forth exactly and exhaustively, so that the defendant may similarly set forth the facts of the defence and thereby the issue be brought out with certainty and clearness.

2. All the facts necessary to constitute a good cause of action must be set forth in the statement.

3. If the allegations are so made that no concise or responsive answer can be made by the defendant, the statement is fatally defective.

4. A statement of claim which contains inferences and conclusions of law violates the act and will be stricken off on motion.

5. A statement of claim which refers to a contract and avers that it was accepted by plaintiff, and that defendant was given due and timely notice of such acceptance is insufficient.

6. Such averments should state whether the notice was written or oral. If in writing, a copy of the writing should be attached or quoted in the body of the statement; if oral, the words used should be given.

Motion to strike off plaintiff's statement of claim. C. P. York Co., April T., 1921, No. 56.

*Niles & Neff,* for plaintiff; *Stewart & Gerber,* for defendant.

Ross, J., Jan. 30, 1922.—A motion to strike off the plaintiff's statement filed in this case was entered Feb. 15, 1921, and was argued at the regular argument court beginning Monday, Sept. 26, 1921.

The reasons upon which the motion is based are stated as follows: "1. The statement is not in concise and summary form of the material facts on which the party relies for their claim as required by the 5th section of the Practice Act of May 14, 1915, P. L. 483. 2. The allegations contained in the several paragraphs of the plaintiff's statement are not consistent with the copy of the alleged contract attached thereto. 3. The remedies claimed in the plaintiff's statement are different from, and contradictory to, those provided in the contract for a breach thereof. 4. The said statement avers that the contract declared on was accepted and confirmed by plaintiff, and defendant was given due and timely notice. But whether it was notice of such acceptance or when or whether in writing or not does not appear, and if in writing, no copy is attached. 5. The paper attached to said statement and alleged to be a copy of the contract is not marked 'Exhibit A.' It is in such fine print and so attached to said statement as to be illegible—and on account of certain cabalistic marks cannot be understood without explanation, and these marks are not explained in the plaintiff's statement."

The 5th section of the Practice Act of 1915 provides that: "Every pleading shall contain, and contain only, a statement in a concise and summary form of the material facts on which the party pleading relies for his claim." An

1 D. & C.

examination of the plaintiff's statement discloses that it is divided into fourteen paragraphs. The fourteenth paragraph reveals the items and amount of the plaintiff's claim as follows: "By reason of the premises, there is justly, legally and equitably due from the defendant to the plaintiff the difference between the purchase price at $12.90 per barrel on the 310 barrels, according to the contract, Exhibit A, and the said price of $8.75 per barrel, the price obtained on said resale, amounting to, to wit.................. $1286.50

| | |
|---|---|
| Also the said demurrage charges accrued at New Freedom.. | 87.00 |
| Also said reconsigning charge at New Freedom............ | 7.00 |
| Also said additional freight charges from New Freedom to Harrisburg ....................................... | 102.76 |

Making a total of plaintiff's claim of..................... $1483.26

with interest thereon from Jan. 14, 1921, and there are no items of set-off, defalcation or counter-claim justly, legally or equitably applicable thereto."

That paragraph shows that it is a mathematical deduction from the premises, *i. e.*, advance statements; consequently, we must go to the advance statements for explanation.

We find paragraph I. The plaintiff is a corporation doing business at Minneapolis, Minnesota. Paragraph III. This action is based upon a written contract, signed by the said defendant on or about Sept. 21, 1920, "C. H. Bollinger, salesman," who solicited the said contract, "and, after its signature by the defendant, forwarded the same to plaintiff at Minneapolis, Minnesota, for acceptance by plaintiff and performance upon plaintiff's part at Minneapolis, Minnesota. Said contract was . . . accepted and confirmed by plaintiff, of which acceptance and confirmation defendant was given due and timely notice." The said paragraph III then states: "A true and correct copy of said contract is hereto attached and marked Exhibit 'A.' " This requires us to examine the only exhibit attached to the statement, although it is not designated as an "exhibit" on its face, and we find a printed paper so attached that it is impossible to ascertain what it is, because the binding by which it is attached to the sworn statement conceals something of the printed matter. By an effort which nearly fractured the binding, we discover the word "contract." Beneath, still concealed by the binding, we find the printed word "Dated," followed by the typewritten "Sept. 21, 1920." The visible part of the exhibit then continues:

"Shane Bros. & Wilson Co., of Minneapolis, Minn., agrees to sell to People's Baking Co., of New Freedom, Pa., who agrees to purchase from seller, at Minneapolis, Minn., at the price or prices, and in the quantity or quantities, stated below, and on the terms and conditions and subject to the agreements stated below and on the back hereof, the following described goods:

| Number Bbls. Flour Tons Feed | Packages | |
|---|---|---|
| | Size | Kind |
| 310 | .98's | cot. |
| | Conf. | 1441 |
| | 9–21–20 | |

| Brand | | Price Flour per Bbl. Feed per Ton |
|---|---|---|
| Gardner's Best | Net | $12.90 |

"Ship to People's Baking Co.
"Destination: New Freedom,
"To be shipped: 60 days.

"Question. Is buyer hereafter to furnish directions for shipment for the above goods within the time, or times, last above written? Ans. Yes. Railroad delivery desired at destination: Penna. R. R. Price terms: Net. Terms of Payment: Arrival. Draft with Bill of Lading attached through First Nat. Bank of New Freedom, Pa. Freight allowed by seller to New Freedom, Pa., at Rate in Effect on Date Hereof.

"Par. 1. Subject to limitations herein, seller's wrongful failure or refusal to substantially perform its part of contract shall authorize buyer to purchase, within 30 days after seller's breach, in open market at manufacturer's prices, in quantity equal to that which seller fails or refuses to ship, goods of the same quality as herein contracted for, and recover, as liquidated damages, excess of price so paid over purchase price herein. There are no representations, guaranties or warranties except such as may be written on face hereof, nor any collateral agreements. The agreements and provisions printed on the back hereof are made part hereof.

"Par. 2. On breach of contract by buyer, liquidated damages shall be recoverable by seller as follows:

"1st. As to any of above goods shipped which buyer wrongfully fails or refuses to pay for or accept, seller may resell same at public or private sale, without notice, and recover from buyer thereon difference between purchase price thereof herein contracted and price obtained on resale, if latter be less than former; also all incidental loss, such as salesman's time and expense, demurrage, storage, cartage, additional freight, reconsigning charges, etc., and any carrying charges unpaid on such goods.

"2nd. As to any of the above flour remaining unshipped by reason of the buyer's breach, seller shall recover damages as follows: (a) A sum equal to 4c multiplied by the number of bushels of grain required to make such unshipped flour, figuring $4\frac{3}{4}$ bushels to the barrel of flour; plus (b) a sum equal to 2c multiplied by the said number of bushels, which sum shall be calculated for each 30 days or fraction thereof intervening between date of this contract and date of breach; plus also (c) amount of decline, if any, per bushel from date of this contract to date of breach, in the highest closing price at Minneapolis of said grain, such price to be, except as to Durum and Rye flour, No. 1 Northern Spring Wheat; as to Durum Flour, No. 1 Amber Durum, and as to Rye flour, No. 2 Rye.

"In case of a rise in such price of such grain between said dates, instead of a decline, seller shall recover the sums at (a) and (b) above, less a sum determined by multiplying amount of such rise per bu., by said number of bus., such prices on date of contract and date of breach being taken to determine amount of decline or rise per bu. Any carrying charges paid on such flour only shall also be deducted from seller's said recovery. If there is neither rise nor decline in such price, seller shall recover the sums at (a) and (b) above, less such carrying charges paid, if any. As to feed, or other mill products, so remaining unshipped, if any, seller shall recover difference (less freight allowed thereon, if any) between purchase price thereof herein contracted and value thereof, to seller, in carload lots, at Mpls., based on its minimum selling price on date of breach, if latter be less than former.

SHANE BROS. & WILSON CO., Seller,<br>
By C. H. Bollinger, Salesman,<br>
People's Baking Co., Buyer,

"No. 3029.　　　　　　　　　　　　　　　　　　　By Ira S. Painter."

On the back of this printed agreement are six other most intricate paragraphs, setting forth conditions, agreements, restrictions, requirements and

1 D. & C.

exceptions, which are most tiresome and puzzling when read in connection with the several paragraphs of plaintiff's declaration or statement of claim.

In connection with the stated fact in the third paragraph of the statement, which informs us that the "action is based upon a written contract;" the fourteenth paragraph, which gives the amount which the action is brought to recover, we have examined the "written contract" as described and partly analyzed in our foregoing observations, but we do not know just what the plaintiff expects to legally prove without a further examination of the statement of claim.

We find in the fourth paragraph of the statement that "on or about Nov. 10, 1920, being before the shipping date of the 310 barrels of flour, the subject of said contract, Exhibit A, defendant clearly informed plaintiff that he would not perform said contract, Exhibit A, and directed and requested the plaintiff to cancel said contract."

Here was a declaration of the statement which requires the defendant to again consult the alleged basis of the action, the contract, Exhibit A. We find nothing there which gives us sufficient information as to what the term "clearly informed" means, or what language was used when defendant "directed and requested the plaintiff to cancel said contract."

It is equally impossible to find out just what was the "shipping date of the 310 barrels of flour," or whether the alleged information that defendant would not perform the contract was written or verbal. The defendant must have the information which would enable him to definitely answer these allegations. The allegations seem to be only matters of conclusion or conjecture and are not statements of facts such as the act requires: Scranton Axle and Spring Co. v. Scranton Board of Trade, 29 Dist. R. 783.

The other allegation of the same paragraph states that "in accordance with the terms and provisions of the said contract, Exhibit A, plaintiff entirely disregarded the said conduct of defendant, and on or about Nov. 16, 1920, notified the defendant that the car containing the said flour would be forwarded in accordance with the terms and conditions of the said contract." Again we are forced to refer to the contract and tediously wade through the labyrinth of terms, conditions, requirements, agreements and parenthetic subdivisions before we discover that the contract gives no explanation of the statements.

So, after studying the statement with all its allegations, we must conclude that it does not give the defendant such a concise summary form of the material facts as would enable the defendant to concisely answer them in the manner required by the act. The Practice Act of 1915 must be held to mean that when actions are brought in the manner provided by law, the pleadings shall be conducted in the manner by that statute defined: Spang & Co. v. Adams Express Co., 75 Pa. Superior Ct. 107. "All the material facts necessary to constitute a good cause of action or defence must be stated; that is to say, every fact that must be either admitted by the other side or proved in order to establish the party's case:" Pennsylvania Practice Act of 1915 (2nd ed.), by David Werner Amram, page 34. "The facts of plaintiff's statement must be set forth exactly and exhaustively, so that the defendant may similarly set forth the facts of the defence, thereby the issue is brought out with certainty and clearness:" Pennsylvania Practice Act of 1915 (2nd ed.), by David Werner Amram, page 34.

A scrutiny of the plaintiff's statement in this case will show that the allegations are so made that no concise or responsive answer can be made by the defendant. Another defect in the statement exists in paragraph III, which

Shane Bros. & Wilson Co. *v.* Painter.

alleges that the contract, as signed by the defendant, was forwarded to the plaintiff, was "accepted and confirmed by plaintiff, of which acceptance and confirmation defendant was given due and timely notice." There is nothing in the statement or the copy of the contract exhibited from which we can learn just what the person who drafted the statement, or the person who swore to the facts in the statement, meant by "due and timely notice." If it was a verbal notice, the method or words used in giving the notice should be given. If in writing, a copy should be attached to or given in the body of the statement. No such requirements appear. The statement only leaves us in a quandary as to the significance of the terms "due" and "timely," or in what terms the alleged acceptance was made.

Quoting from Smith on Pennsylvania Practice Act, page 44: "A statement which contains inferences and conclusions of law violates the provisions of section 5 of the Practice Act of 1915, and will be stricken off, on motion," citing Kennedy *v.* Scranton Ry. Co., 29 Dist. R. 751. "A statement, under the Practice Act of 1915, must contain, and contain only, facts without mention of inferences, legal conclusions or any qualification whatever. The rule of strict construction applies, and the only safe course in pleading is to strictly adhere to the restrictions prescribed by the act," citing Powell *v.* D., L. & W. R. R. Co., 20 Lacka. Jurist, 306; Delaney *v.* Chester, 26 Dist. R. 62.

The first, second, third and fourth reasons which the defendant assigns in support of his motion are sufficient to warrant the court in granting the motion.

And now, Jan. 30, 1922, the plaintiff's statement is stricken off, and the plaintiff is granted fifteen days from this date to file another statement of claim in accordance with the foregoing opinion.

From Richard E. Cochran. York, Pa.